[No. B104490. Second Dist., Div. Six. July 24, 1997.]

RAYMON MOTE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, KIMSTOCK, INCORPORATED, et al., Respondents.

COUNSEL

Allan S. Ghitterman for Petitioner.

Egger & Hallett and David J. Misity for Respondents.

OPINION

**GILBERT, J.**—The following case demonstrates what happens when the Workers' Compensation Appeals Board unreasonably denies a variety of penalties.

Petitioner Raymon Mote suffered industrial injuries and seeks workers' compensation. The workers' compensation judge (WCJ) found that Mote is entitled to indemnity for temporary total disability (TTD) and further medical treatment. Mote filed a petition to impose multiple penalties for failure and delay in paying TTD, unreasonable delay in increasing the rate of TTD and failure to provide medical and psychiatric care, among other things. The WCJ denied the entire petition for penalties, and the Workers' Compensation Appeals Board (WCAB or the board) denied the petition for reconsideration.

Mote petitions for review to annul the order of the WCAB denying reconsideration of his petition to impose multiple penalties against respondents, Kimstock, Incorporated, his employer, and the California Compensation Insurance Company (Cal. Comp.), Kimstock's insurance carrier. (*Greener* v. *Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1040 [25 Cal.Rptr.2d 539, 863 P.2d 784].)

The WCAB unreasonably denied a variety of statutory penalties due Mote for failures and delays in providing TTD, for untimely and incorrect adjustments to TTD, for failing to provide medical and psychiatric treatment and medications. We therefore annul the order of the WCAB with directions to impose penalties consistent with this opinion.

FACTS

On October 10, 1991, Mote injured his thumb while working as a plumber for Kimstock. Mote suffered adverse reactions to medication during reconstructive surgery. While driving to his doctor's office on September 17, 1992, for treatment for the injuries, Mote's vehicle was "rear-ended" causing further injuries. Mote sustained industrial injury to his thumb, arm, leg, back, neck, internal systems, hearing and psyche.

On April 22, 1994, Doctor James Wells, the agreed medical examiner (AME) for psychiatry, found that Mote suffered TTD due to major depression, necessitating intensive, sophisticated pharmacological and psychological treatment.

The parties stipulated that at the time Mote hurt his thumb his earnings of $800 per week warranted indemnity of $336 per week for TTD. Respondents stipulated to timely providing the WCJ a printout of all benefits provided the applicant.

The printout of benefits was not timely provided. On March 10, 1995, the WCJ heard Mote's claims for further medical treatment, reimbursement for self-procured medical treatment and TTD, among other things. Mote claimed penalty against Cal. Comp. under Labor Code[1] sections 4661.5 and 5814 for respondents' unreasonable failure to pay TTD within two years from the date of injury and at the correct rate, and for strict liability under section 4650, subdivision (d) for late payments of TTD.

Mote also raised the issues of delays and refusal in providing medical treatment. Mote testified that Doctor Wells prescribed psychotherapy not provided by respondents.

On July 5, 1995, the WCJ accepted the stipulations as true, found that Mote's continuing injuries began on January 10, 1991 (*sic* October 10, 1991), and that his injuries required further medical treatment. The WCJ found that Mote was entitled to reimbursement for self-procured treatment. The WCJ awarded Mote TTD at the rate of $336 per week beginning January 10, 1991 (*sic* October 10, 1991), to continue indefinitely until further order of the court, less credit for sums paid and treatment provided. The WCJ ordered "that all such other and further matters placed an [*sic*] issue at time of hearing, as reflected in the minutes of hearing, are place [*sic*] off calendar, with jurisdiction reserved." The WCJ issued his order without benefit of the payment printout of benefits provided. Mote did not petition for reconsideration of the initial award.

On September 22, 1995, Mote petitioned for retroactive TTD and for penalties pursuant to section 5814 for respondents' refusal to compensate him pursuant to the award, for failure to pay TTD pursuant to Doctor Wells's psychiatric findings, for unreasonable delay in adjusting TTD under section 4661.5, for failing to pay back due TTD, for failure to pay TTD timely and at the proper rate and for failure to tender medical and psychiatric care previously ordered. The hearing on the penalty provision was heard on December 26, 1995.

---

[1]All statutory references are to this code unless otherwise stated.

Mote alleges he gave notice to the WCAB, respondents and respondents' counsel on July 5 and 7, 1995, of his requests for penalty and medical treatment.

Respondents assert they have not refused to authorize medical treatment, because they received no claim for medical treatment and were unaware of any outstanding bills since July 5, 1995. Among other things, they assert that demands for psychotropic medication and psychological treatment have not been substantiated.

Respondents admit receipt of two reports from Doctor Michael Bailey. One report, dated June 9, 1994, states that a psychiatric consultation should be obtained to reinforce dispensing of psychotropic drugs. The other report, dated September 5, 1995, states that Doctor Bailey had been supervising Mote's treatment for chronic depression. Mote provided letters from his attorney during August through October 1995 objecting to delays in payments for such medication. Before the December 26, 1995, hearing on the penalty petition, respondents provided the printout of benefits paid.

Mote testified to the delay in payment of proper TTD payments and his inability to obtain psychotropic medications prescribed because of the refusal of insurance to pay for it. He made requests for payment through his attorney instead of making the request himself to the insurer.

On January 12, 1996, respondents conceded that one penalty is warranted for failing to adjust Mote's TTD rate as of July 1, 1994, as a single continuous unreasonable act in violation of section 4453, subdivision (a)(5). Respondents opined that multiple penalties for successive delays were not warranted because no prior penalty had been assessed against them nor prior notice given that Mote intended to seek such penalties. They relied on Mote's attorney's stipulation to the $336 rate through December 26, 1995.

The WCJ denied Mote's penalty petition, finding that payment of TTD at the stipulated rate of $336 per week is res judicata because Mote did not petition for reconsideration of the initial award. The WCJ stated that "As applicant [Mote] is not being paid at the proper rate, payment should be provided by insurance other than workers' compensation." The WCJ determined that Mote did not sustain his burden of proof by competent evidence to establish failure or delay in providing TTD, medical or psychiatric treatment.

On May 16, 1996, Mote filed a petition for reconsideration of his request for imposition of penalties. He listed failures to adjust TTD pursuant to

section 4661.5, failure to penalize for payments 14 days late, as required by section 4650, subdivision (d), failure to provide any indemnity between January 31, 1994, and April 8, 1994, failure to tender medical and psychiatric care as determined by his doctors prior to July 1995 or after as determined by the board order despite his demand of July 7, 1995, and failure to comply with the order for payment of TTD made July 5, 1995.

The WCJ recommended denying the petition for reconsideration, citing the stipulated TTD rate and noting that Mote requested treatment through his attorney instead of directly from the insurer. He ruled that Mote's hearsay evidence was inadequate. The WCAB adopted the recommendation of the WCJ and denied the petition. Mote filed the instant petition for writ of review.

### DISCUSSION

"In considering a petition for writ of review of a decision of the WCAB, this court's authority is limited. This court must determine whether the evidence, when viewed in light of the entire record, supports the award of the WCAB. This court may not reweigh the evidence or decide disputed questions of fact. [Citations.] However, this court is not bound to accept the WCAB's factual findings if determined to be unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme. [Citation.] Questions of statutory interpretation are, of course, for this court to decide. [Citations.]" (*Western Growers Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233-234 [20 Cal.Rptr.2d 26]; see also *Chu* v. *Workers' Comp. Appeals Bd.* (1996) 49 Cal.App.4th 1176, 1182 [57 Cal.Rptr.2d 221]; §§ 5950, 5954.) "All aspects of workers' compensation law . . . are to be liberally construed in favor of the injured worker. [Citation.]" (*Save Mart Stores* v. *Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 720, 723 [4 Cal.Rptr.2d 597]; § 3202.)

Mote seeks multiple penalties pursuant to sections 5814, 4661.5, and 4650, subdivision (d) for unreasonable failure and delay in providing various benefits at the correct rate. Respondents argue that Mote's stipulation to the TTD rate of $336 in October 1991 precludes adjustment, and that Mote failed to adequately support his requests for other, multiple penalties.

The stipulation to the TTD rate in 1991 did not waive future statutory increases and did not relieve respondents from providing statutory adjustments of Mote's TTD over time. Mote raised this issue at both the March and December hearings. Moreover, respondents concede they failed to pay TTD timely and at the correct rate.

The printout of benefits shows that respondents paid a lump sum of $6,930.38 for unpaid accrued TTD around December 20, 1994. This evidence alone gives rise to multiple penalties under sections 5814 (for unreasonable delay), 4650, subdivision (d) (for single 14-day late payments), and 4661.5 (for payments at the wrong rate). Mote is also entitled to back payments and to penalties for failures and delays in providing or paying for medical and psychiatric benefits and medications.

### Section 4650

█ Under section 4650, the first payment of TTD shall be made not later than 14 days after knowledge of the injury and disability on which date all indemnity then due shall be paid. Subsequent payments of TTD must be made as due every two weeks on the day designated with the first payment.

"If *any* indemnity payment is not made timely as required by this section, the amount of the late payment *shall be increased 10 percent and shall be paid, without application, to the employee, . . .*" (§ 4650, subd. (d), italics added; *State of California* v. *Workers' Comp. Appeals Bd.* (1996) 44 Cal.App.4th 128, 138-139 [51 Cal.Rptr.2d 606].)

"The section 4650 penalty does not duplicate or supersede the section 5814 penalty; . . . the section 4650 penalty, which is a self-executing, strict liability provision not dependent on a finding of unreasonable delay, is intended to supplement, not replace, the section 5814 penalty. [Citation.]" (*State of California* v. *Workers' Comp. Appeals Bd.*, *supra*, 44 Cal.App.4th at p. 139; *Christian* v. *Workers' Comp. Appeals Bd.* (1997) 15 Cal.4th 505, 517-518 [63 Cal.Rptr.2d 336, 936 P.2d 115].) Thus, respondents are strictly liable for section 4650 penalties, without application or demand, in addition to any other penalties which may be assessed against them.

█ The printout of benefits paid shows a gap in TTD payment between August 23, 1993, and November 30, 1993. On December 13, 1993, $672 was paid for TTD for the period between November 30 and December 13, 1993. The employer made a lump sum payment on December 20, 1994, for TTD between April 18, 1994, and December 20, 1994. Each of the separate failures to pay amounts due within 14 days justifies penalties under section 4650. The WCAB is directed to order payment of section 4650 penalties for late payments throughout these gaps and for any other gaps of TTD payments of 14 days or more as shown by the printout or otherwise.

### Sections 4661.5 and 5814

█ Section 5814 provides that "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the

issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent." Section 5814 is to be interpreted liberally to protect injured employees and applies to virtually all types of benefits provided by workers' compensation laws. (*State of California* v. *Workers' Comp. Appeals Bd.*, *supra*, 44 Cal.App.4th at pp. 139-140.) Where the employer does not pay a type of benefit or unreasonably delays payment due, the WCAB cannot refuse to impose the section 5814 penalty. (44 Cal.App.4th at pp. 139-140.) Section 5814 penalties are part and parcel of the original compensation award. (44 Cal.App.4th at p. 140.)

■ Section 4661.5 provides that when any TTD payment is made two years or more from the date of injury, the amount of that payment shall be computed according to the amount specified in section 4453 in effect on the date the payment is made. (*Hofmeister* v. *Workers' Comp. Appeals Bd.* (1984) 156 Cal.App.3d 848, 852 [203 Cal.Rptr. 100].) The increases in the rate of TTD over time reflect inflationary conditions to which the worker is entitled under statute. (*Id.*, at p. 853.) Penalties are warranted for such delay or nonpayment of each type of benefit.

■ Each such penalty shall be computed on the whole of the award applicable for the particular class of benefit involved. (*Christian* v. *Workers' Comp. Appeals Bd.*, *supra*, 15 Cal.4th at p. 514, citing *Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1227-1228 [18 Cal.Rptr.2d 129, 848 P.2d 244], with approval.) These penalties are to be assessed on the entire amount ultimately awarded for the benefit without deduction for payments made without delay.

Multiple penalties should be imposed if the employee suffers separate and distinct acts of delay or nonpayment of different benefits by the employer or insurance carrier. (*Christian* v. *Workers' Comp. Appeals Bd.*, *supra*, 15 Cal.4th at p. 507.)

For example, multiple penalties are imposed for delay in paying TTD prior to stipulation, delay in paying TTD at the proper rate after stipulation, delay in reimbursing hospital costs and delay in reimbursing physical therapy costs. (*Christian* v. *Workers' Comp. Appeals Bd.*, *supra*, 15 Cal.4th at pp. 511-513, 515, citing *Viegas* v. *Workers' Comp. Appeals Bd.* (1983) 148 Cal.App.3d 423 [196 Cal.Rptr. 10], with approval.) Multiple penalties also are applied for refusal or delay in payment of a benefit if a prior penalty has been assessed for the same unreasonable conduct. (*Christian*, *supra*, at pp. 511-513.)

Multiple penalties do not apply for repeated delays in making a series of increased payments due for a single type or class of benefit, unless such

increased payment still has not been made after a first penalty payment therefor has been assessed. (*Christian* v. *Workers' Comp. Appeals Bd.*, *supra*, 15 Cal.4th at pp. 513-514, 517, citing *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 823-824 [153 Cal.Rptr. 590, 591 P.2d 1242].)

Notice of intent to seek penalties does not per se constitute a separate and distinct act triggering penalties for failure to resume or begin payments prior to the hearing on the penalty claim. (*Christian* v. *Workers' Comp. Appeals Bd.*, *supra*, 15 Cal.4th at pp. 516-517.)

## *TTD*

■ Here, the WCAB refused penalty for respondents' admitted continuous failure to adjust TTD as of July 1, 1994, pursuant to sections 4453, 4661.5 and 5814, for failure to adjust TTD again on July 1, 1995, and for failure to adjust it at the correct amount. The refusal to require payment of the admitted penalty for a single continuous failure to adjust TTD is improper and unreasonable and requires us to annul the decision of the board.

The applicable TTD rate for Mote in 1991 was $336 per week. Around December 20, 1994, respondents paid Mote the lump sum of $6,930.38 for some accrued TTD not paid since April 1994. This delayed payment at the incorrect $336 rate was made more than two years after the date of initial injury. The rate payable to Mote was $406 per week as of July 1, 1994. Respondents did not pay the correct rate until October 24, 1995. Meanwhile, the proper statutory rate had increased to $448, as of July 1, 1995. The adjustment between the $336 rate and the $448 rate, due from July 1, 1995, to October 11, 1995, has not been paid.

Respondents shall pay a single penalty on the entire amount of TTD for the unreasonable delay in failing to pay TTD in 1994. Respondents shall pay another single penalty on the entire amount of TTD for failure to pay at the correct adjusted statutory rate of TTD between July 1, 1994, and October 11, 1995. These penalties shall be assessed without deduction for prior payments made for TTD. Each penalty shall be computed based on the rate applicable to such payments at the time they were actually made or at the time they are computed, in the case of nonpayment. (*Christian* v. *Workers' Comp. Appeals Bd.*, *supra*, 15 Cal.4th at p. 514; *Gallamore* v. *Workers' Comp. Appeals Bd.*, *supra*, 23 Cal.3d at p. 827; *Hofmeister* v. *Workers' Comp. Appeals Bd.*, *supra*, 156 Cal.App.3d at pp. 852-853.)

## *Medical Benefits*

■ The issues of failure in providing medical treatment, payment for self-procured medical treatment, as well as medications, had been raised at

the first hearing; the issue of penalties for delay for these delinquencies had been raised at the December 26th hearing. ▉ Where, as here, the employer has a continuing duty to provide such benefits as found by the agreed medical examiner, the petitioner may subsequently raise the issue of penalties for such unreasonable conduct in refusing or delaying such benefits. (See generally, *Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223 [93 Cal.Rptr. 192, 481 P.2d 200].)

▉ In his report of April 22, 1994, Doctor Wells, the AME regarding psychiatric benefits, concluded that Mote suffered from major depression requiring intensive and sophisticated psychological and pharmacological treatment. On July 5, 1995, the WCJ found that Mote required further medical treatment as needed to cure or relieve the effects of the injuries, and that he was entitled to reimbursement for self-procured medical treatment.

On September 22, 1995, Mote sought penalties for failure to tender and pay for medical treatment for his spine, for psychiatric care and for failure to reimburse him for medications, pursuant to the award and his record request of July 7, 1995.

After the December 26, 1995, hearing, the board refused to impose these penalties because Mote's written requests on August 15, 1995, and October 31, 1995, were made through counsel rather than directly to it. Such a curious ruling makes counsel superfluous. His successful advocacy here demonstrates the absurdity of such a notion.

The board also denied penalties on the ground that Mote's testimony included hearsay. In light of the evidence, this finding was illogical, improbable, and inequitable. (*Western Growers Ins. Co.* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.App.4th 227.)

Respondents had written notice from several sources of his requests for medical and psychiatric care and for medication as reported, prescribed and approved by his doctors. Mote's testimony on these matters was admitted into evidence without objection. And hearsay is permitted in workers' compensation hearings. (§§ 5708, 5709; *McAllister* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 408, 413, fn. 2 [71 Cal.Rptr. 697, 445 P.2d 313].) The WCJ admitted into evidence, in addition to Mote's testimony, the stipulations, AME medical reports and letters. Respondents conceded they paid for some care and for prescriptions from Cauch's Drug Store, corroborating Mote's testimony. Further evidence was provided by the late printout.

The burden should have shifted to respondents to explain their alleged failure to provide medical care and medications, and their delays in treatment, providing medications and reimbursements therefor. (*Kerley* v. *Workmen's Comp. App. Bd.*, *supra*, 4 Cal.3d at p. 227.) There is no genuine doubt from a legal or medical standpoint that such failures and delays occurred here. (*Ibid.*)

The WCAB is directed to assess further single penalties each for: 1. the combined failures and delays in providing medical care, treatment, equipment and reimbursement, and 2. failure to provide medications and late reimbursements for providing medications.

Continuing failures and delays for providing medical care, for reimbursing payments made for providing medical care, and for medications to be provided through the pharmacy are separate and distinct acts supporting these additional, multiple penalties.

The order denying reconsideration of penalties is annulled with directions to the board to calculate and order penalties in accord with this opinion. Costs to Mote.

Stone (S. J.), P. J., and Yegan, J., concurred.

A petition for a rehearing was denied August 20, 1997.